**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE HARVARD PILGRIM DATA SECURITY INCIDENT LITIGATION | Case No. 1:23-cv-11211-NMG |
| This Document relates to: All Cases | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>PROPOSED CLASS ACTION SETTLEMENT AND DIRECTION OF CLASS NOTICE</u>
<u>LEAVE TO FILE GRANTED ON 02.25.2025</u>**

## INTRODUCTION

Plaintiffs respectfully request the Court grant preliminary approval of a proposed Settlement Agreement and Release (the "Settlement Agreement" or "S.A."), attached to the Joint Declaration of James J. Pizzirusso and John Yanchunis ("Joint Decl.") as Exhibit 1, resolving their claims against Defendants Harvard Pilgrim Health Care, Inc. ("Harvard Pilgrim") and Point32Health, Inc. ("Point32Health") (together, "Defendants") in the above-captioned litigation.[1]

If approved, the Settlement Agreement will establish a non-reversionary cash fund in the amount of $16,000,000 (the "Settlement Fund"),[2] which will be used to: (1) pay for Approved Claims, (2) make alternative cash payments to Settlement Class Members, (3) provide credit monitoring services to participating Settlement Class Members, (4) cover Notice and Administrative Expenses, (5) pay any Service Awards to Settlement Class Representatives, as approved by the Court, and (6) pay any Attorneys' Fees and Expenses, as approved and awarded by the Court. S.A. ¶¶ 3.1.2, 4.1–4.6. Over and above the Settlement Fund, Defendants have implemented significant business practice changes and security enhancements (or will implement such) to prevent future data security incidents. *Id.* ¶ 5.1.

The Settlement Agreement provides substantial relief to the Settlement Class, addresses the typical harms sustained by consumers following a data breach, and its terms are well within the range of reasonableness and consistent with applicable law, particularly considering the

---

[1] Defendants do not oppose the relief sought by this Motion for Preliminary Approval and agree that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, Defendants do not concede the factual basis for any claim and deny liability.

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as those defined in Section II of the Settlement Agreement.

extensive risks and uncertainties of further, protracted litigation. It is the product of well-informed, arm's-length negotiations, including a full-day mediation facilitated by the Honorable Margaret A. Nagle (Ret.), who is an experienced mediator and former U.S. Magistrate Judge. *Id.* ¶ 1.10. The Settlement Agreement is a fair and reasonable result that delivers tangible and immediate benefits to all Settlement Class Members and therefore merits this Court's preliminary approval.

## BACKGROUND

Point32Health is a healthcare company offering a broad range of health plans and tools for navigating healthcare and well-being. Cons. Compl. ¶ 65. Point32Health is comprised of a family of companies, including Harvard Pilgrim: a subsidiary and brand of Point32Health providing health benefit plans, programs, and services to more than 1.1 million members in Massachusetts, New Hampshire, Maine, and beyond. *Id.* ¶ 66. Plaintiffs are, or were, members of Harvard Pilgrim health plans during the over ten-year period between March 28, 2012, and April 17, 2023 (including individual and family plans purchased directly from Harvard Pilgrim, through state-based exchanges, or through plans selected through their employers). Joint Decl. ¶ 3. To receive services from Defendants, Plaintiffs were required to provide Defendants with their personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Personal Information"). *Id.* ¶ 4.

Between March 28, 2023, and April 17, 2023, Harvard Pilgrim was the target of a ransomware attack on its network, exposing the Personal Information of about 2,967,396 individuals, including Plaintiffs and Settlement Class Members (the "Data Security Incident"). S.A. ¶¶ 1.2-1.3. Starting on May 24, 2023 (but in some cases, not until June 2024), Defendants notified affected individuals that their Personal Information had been copied and taken from

Harvard Pilgrim's systems. *Id.* ¶ 1.3. Following an investigation, Defendants confirmed the compromised Personal Information included: "names, physical addresses, phone numbers, dates of birth, health insurance account information, Social Security numbers, provider taxpayer identification numbers, and clinical information (e.g., medical history, diagnoses, treatment, dates of service, and provider names)."[3]

On May 30, 2023, Plaintiffs Girard Patterson and Maribeth Murphy filed a class action suit against Defendants. Dkt. 1. Thereafter, numerous additional lawsuits were filed, and Plaintiffs moved for consolidation on June 22, 2023. Dkt. 8. On July 13, 2023, the Court ordered that the various related actions be consolidated. Dkt. 16. Then, on March 12, 2024, after extensive briefing on motions to lead the proposed Class, the Court appointed James J. Pizzirusso and John Yanchunis as Interim Co-Lead Counsel ("Interim Co-Lead Counsel"). Dkts. 36, 65. Plaintiffs subsequently filed the operational Consolidated Class Action Complaint ("Cons. Compl.") on April 26, 2024.

In their Consolidated Class Action Complaint, Plaintiffs allege Defendants had long known, or had reason to know, their electronic record-keeping systems were prime targets for hackers. Cons. Compl. ¶¶ 78–80. Despite this known threat, Defendants allegedly failed to take basic, known, and available steps to secure the Personal Information in their custody. *Id.* ¶¶ 81–90. Plaintiffs allege that as a direct result of Defendants' failure to implement basic data security safeguards, Plaintiffs' Personal Information is now in the hands of cybercriminals. Plaintiffs have already suffered real consequences, including actual and attempted misuse of their stolen information. *See, e.g.*, *id.* ¶¶ 168, 179, 190, 224, 232, 244, 254, 265. Plaintiffs also face a present,

---

[3]    Harvard    Pilgrim    Health    Care,    *Notice    of    Data    Security    Incident*, https://www.harvardpilgrim.org/public/notice-of-data-security-incident.

ongoing, and imminent risk of identity theft and other fraudulent activity at the hands of criminals seeking to profit from their Personal Information. *Id.* ¶¶ 98, 147–52, 159, 168, 170, 181–82, 190, 192, 204, 214, 224, 234, 242–44, 256, 265–67. Plaintiffs further allege they have already and will continue to devote significant time, money, and energy to protect themselves from the effects of the Data Security Incident. *Id.* ¶¶ 161, 172, 183, 194, 206, 215, 225, 236, 247, 258, 269. And the present, continuing and substantial risk of harm and loss of privacy have allegedly caused Plaintiffs to suffer significant stress, fear, and anxiety. *Id.* ¶¶ 13, 147, 153–271, 273–275. To remedy these alleged harms, Plaintiffs asserted claims for negligence, negligence *per se*, breach of implied contract, breach of bailment, violations of the Massachusetts Consumer Protection Act, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, violations of the Maine Unfair Trade Practices Act, violations of New Hampshire Chapter 358-A, violations of the Tennessee Consumer Protection Act, invasion of privacy, unjust enrichment, declaratory judgment, breach of third-party beneficiary contracts, and breach of fiduciary duty. *Id.* ¶¶ 301–471.

On June 10, 2024, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. 79–80. Plaintiffs responded in opposition on July 29, 2024, Dkt. 83, but this matter reached a resolution before the Court could issue its opinion. The case was stayed on September 4, 2024, and the Court denied the motion to dismiss as moot because of the Settlement for which Plaintiffs now seek preliminary approval. Dkt. 91.

Throughout 2024, the Parties engaged in extensive, arm's-length settlement negotiations, including a full-day mediation with the Honorable Margaret A. Nagle (Ret.), who is an experienced mediator and former U.S. Magistrate Judge, with both sides represented by experienced counsel. *See* S.A. ¶ 1.10. In advance of mediation, the Parties prepared and

exchanged comprehensive mediation briefs and informal discovery. Joint Decl. ¶¶ 6–7. Before any settlement terms were negotiated, Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of Defendants' anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses in this matter. *Id.* ¶ 8. The Parties exchanged additional information, including relevant financial and insurance information, to facilitate further negotiations. Interim Co-Lead Counsel negotiated the proposed Settlement armed with all information that in their experience is necessary and beneficial in data breach litigation. *Id.* ¶ 9.

Interim Co-Lead Counsel negotiated with and obtained bids from several well-established, experienced, and highly regarded class action administration firms before selecting Simpluris to serve as Settlement Administrator. *Id.* ¶ 10. Plaintiffs maximized the amount that would be available to the Settlement Class for payment of claims by minimizing notice and administration costs, while ensuring the notice and administration plan complied with all rules, guidelines, and due process requirements.

## TERMS OF THE SETTLEMENT

The proposed Settlement Class is defined as:

> All individuals residing in the United States whose Personal Information was impacted by the Data Security Incident—including all individuals who were notified of the Data Security Incident.

S.A. ¶ 2.41. The proposed Settlement Class consists of approximately 2,967,396 individuals whose Personal Information was compromised in the Data Security Incident. Joint Decl. ¶ 3. The Settlement Agreement provides for a non-reversionary cash fund of $16,000,000. S.A. ¶ 2.43. The Settlement Fund will be used to: (1) pay for Approved Claims, (2) make alternative cash payments to Settlement Class Members, (3) provide credit monitoring services

to participating Settlement Class Members, (4) cover Notice and Administrative Expenses, (5) pay any Service Awards to Settlement Class Representatives, as approved by the Court, and (6) pay any Attorneys' Fees and Expenses, as approved and awarded by the Court. S.A. ¶¶ 3.1.2, 4.1–4.6. The Settlement is designed to exhaust the Settlement Fund, and any residual funds, if economically feasible and practical, will be distributed *pro rata* to Settlement Class Members. *Id.* ¶ 3.3.

The Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement. They may submit claims for compensation for: documented out-of-pocket expenses incurred because of the Data Security Incident, in an amount up to $2,500 (S.A. ¶ 4.2); lost time for up to seven hours at $30 per hour (*id.* ¶ 4.2.3); lost time may be claimed together with documented out-of-pocket expenses up to $2,500; fairly traceable extraordinary losses up to $35,000 (*id.* ¶ 4.3); two years of credit monitoring and identity theft protection services (*id.* ¶ 4.6); or an alternative cash payment of $150 (*id.* ¶ 4.4). Defendants have further agreed to make numerous business practice changes to improve their data security to   adequately protect their customers' Personal Information and   future data breaches. *Id.* ¶ 5.1.

In exchange for the monetary and non-monetary benefits provided under the Settlement Agreement, Settlement Class Members will release any and all claims against Defendants and the Released Parties arising from or in any way related to the Data Security Incident at issue in this litigation. *Id.* ¶ 15.1.

To administer the claims and notice processes, the Parties propose that Simpluris serve as Settlement Administrator, subject to the Court's approval. *Id.* ¶ 2.39. Prior to selecting Simpluris, the Parties obtained bids from multiple claims administrators. Joint Decl. ¶ 10.

Following careful review of the competing bids, counsel determined that Simpluris' bid was most favorable to the Settlement Class and negotiated to secure the current bid price. *Id.*

## ARGUMENT

The Settlement Agreement is fair, adequate, and reasonable, particularly considering the substantial risks and uncertainties of further, protracted litigation of this matter. Accordingly, Plaintiffs request that the Court grant their Motion for Preliminary Approval, order distribution of Notices to the Settlement Class, and set a date and time for a Final Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

### I.    The Settlement Merits Preliminary Approval

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citation and quotations omitted); *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."). Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action must be approved by the court. Fed. R. Civ. P. 23(e). "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Id.* (citation omitted). In a court's preliminary evaluation of a proposed settlement, "the Court determines only whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2018 WL 11293802, at *1 (D. Mass. Mar.

12, 2018) (citation omitted).

To preliminarily approve a class action settlement, the settlement must be "in the range of fair, reasonable, and adequate." *Solodyn*, 2018 WL 11293802, at *1. When evaluating whether the settlement is within the range of reasonableness, courts consider the settlement benefits "in light of the possible recovery in the litigation and the risks of litigation." *Hill v. State St. Corp.*, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015). The settlement need not represent "the best possible recovery," but the recovery must be weighed against "the strengths and weaknesses of the case" given "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment." *Id.*

When certain procedural guidelines are met, courts in the First Circuit presume that a proposed settlement is within the range of reasonableness such that the court should grant preliminary approval. *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). Those procedural guidelines include whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (quoting *Lupron*, 345 F. Supp. 2d at 137). The fourth factor is more often relevant for purposes of final approval, after notice has been issued and class members have been given an opportunity to object to the proposed settlement. *Lupron*, 345 F. Supp. 2d at 137.

### i. The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations

The first factor considers whether a proposed settlement "is the result of serious, informed arm's length negotiations" entitling the settlement to a presumption of reasonableness. *New England Biolabs, Inc. v. Miller*, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022). A settlement negotiated at arm's-length is typically presumed reasonable. *See Nat'l Ass'n of the*

*Deaf v. Mass. Inst. of Tech.*, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel.").

Here, the presumption of reasonableness applies because the Settlement Agreement was reached following protracted arm's-length negotiations between highly experienced lawyers with substantial experience litigating data breach cases, and after the exchange of informal discovery and formal mediation with the Honorable Margaret A. Nagle (Ret.), an experienced mediator and former U.S. Magistrate Judge. Joint Decl. ¶¶ 6–9; S.A. ¶ 1.10. Though hard-fought, the mediation was ultimately successful and resulted in the Parties agreeing to the Settlement in principle and signing a term sheet. *Id.* ¶¶ 1.10–11. Thereafter, the Parties continued to finalize the terms of the Settlement before entering into the finalized Settlement Agreement that is the subject of this motion. Counsel for Defendants and Interim Co-Lead Counsel who participated in the mediation are knowledgeable and respected litigators with significant experience in complex cases, including many of the largest data breach and data privacy cases ever litigated. *See id.* ¶¶ 11–12.

### ii. The Parties Exchanged Sufficient Informal Discovery to Inform Resolution

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery has been completed, but whether sufficient discovery has been conducted for the parties to make an intelligent judgment about settlement. *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the Parties reached the proposed Settlement after exchanging significant informal discovery. Joint Decl. ¶¶ 7–9. The informal discovery received and reviewed by Interim Co-Lead Counsel, along with their knowledge and experience in this area of the law, provided them with the information needed to objectively evaluate the strengths

and weaknesses of Plaintiffs' and Settlement Class Members' claims. *Id.* ¶ 9. Though the Parties had not completed formal discovery, Interim Co-Lead Counsel has litigated numerous data breach class actions and was fully informed regarding the type of discovery necessary to conduct informed and empowered settlement negotiations. *Id.* ¶ 9, 11–12. Based on the information provided and the benefits achieved for the Class, Interim Co-Lead Counsel believe the Settlement is an excellent result. *Id.* ¶ 13. Thus, Interim Co-Lead Counsel believe the Settlement is fair, reasonable, and adequate. *Id.* Because the Parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *M3 Power*, 270 F.R.D. at 63.

### iii.   The Proponents of the Settlement Are Highly Experienced in Data Breach Litigation

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *M3 Power*, 270 F.R.D. at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Interim Co-Lead Counsel, who were appointed by the Court, are experienced class action litigators with significant experience litigating data breach actions, including many of the

largest data breach cases ever filed. Joint Decl. ¶¶ 12–13. Courts have recognized Interim Co-Lead Counsel's experience in this area of law and have repeatedly adjudged them adequate under Federal Rules 23(a)(4) and 23(g). *Id.* Interim Co-Lead Counsel have demonstrated throughout this litigation that they are well-versed in data breach and privacy law, and they have prosecuted this matter with vigor and commitment. The Parties have considered the reasonableness of the Settlement in light of the risks of continued litigation, the relevant facts and law, and their experience litigating data breach actions. Joint Decl. ¶ 14. In light of their broad experience in consumer class litigation, and particularly in data breach litigation, Interim Co-Lead Counsel strongly believe the proposed Settlement is fair, reasonable, and adequate. This factor, therefore, supports preliminary approval.

### iv.  Settlement Class Objections

The fourth factor considers Plaintiffs' and Class Members' reaction to the Settlement. This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement. *Lupron*, 345 F. Supp. 2d at 137. Because the Notice Plan has not been ordered to commence, absent Class Members remain without sufficient information to know whether to object or exclude themselves, or even how to do so. Thus, although this Settlement is within range of possible final approval, the Court should later consider the reaction of the Class when determining whether to finally approve the Settlement.

### II.    The Proposed Settlement's Plan of Allocation is Fair, Reasonable, and Adequate

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, adequate, and reasonable. *Boston Sci. Corp.*, 708 F. Supp. at 109 (citation omitted). "A plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *New*

*England Biolabs*, 2022 WL 20583575, at *4. "A reasonable plan of allocation need not necessarily treat all class members equally but may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims." *Hill*, 2015 WL 127728, at *11 (internal citations and quotations omitted). "In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel." *Id.*

Here, the proposed settlement benefits provide all Settlement Class Members with the same equal opportunity to file claims for reimbursement of ordinary out-of-pocket expenses, lost time, reimbursement of extraordinary losses, or an alternative cash payment, in addition to claims for credit monitoring and identity theft protection services. Joint Decl. ¶ 15. The settlement benefits plan was designed to provide equal treatment to those who did not incur out of pocket losses while allowing for individualized compensation to Settlement Class Members who incurred expenses as a result of the Data Security Incident. *Id.* Indeed, the proposed Settlement benefits are similar to other court-approved allocation plans in other data breach cases. *Compare id.* ¶ 14; *with Barletti v. Connexin Software, Inc.*, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (granting preliminary approval of data breach settlement that provided class members the ability to file a claim for credit monitoring services, out-of-pocket losses, or an alternative cash payment); and *In re Capital One Consumer Data Security Breach Litig.*, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services because it treated class members equitably). Thus, the proposed Settlement plan is fair, reasonable, and adequate.

### III.    The Proposed Settlement Class Meets the Requirements for Class Certification

In preliminarily approving a class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts routinely find that data breach classes meet the class certification requirements. *See, e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, 2024 WL 1366832, at *22 (W.D. Ky. Mar. 29, 2024); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 485 (D. Minn. 2015). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a settlement class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See Amchem*, 521 U.S. at 620–21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *Amchem*, 521 U.S. at 613. When, as here, a class is proposed under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority." Here, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

### A.  The Requirements of Rule 23(a) are Satisfied

Pursuant to Rule 23(a), a proposed class must satisfy four prerequisites: (1) the class is

so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). Here, the proposed Settlement Class meets all four Rule 23(a) requirements.

### i. Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden v. HarborOne Bank*, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (citation omitted). Here, the Class is so numerous that joinder is impracticable. The Settlement Class consists of approximately 2,967,396 individuals, far surpassing the threshold number of forty individuals. S.A. ¶ 2.41. Moreover, most Settlement Class Members have already been identified by Defendants and/or their data custodians in their investigation of the Data Security Incident and their issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127–28 (S.D.N.Y. 2011) (finding defendants' business records may be used to ascertain class members). Numerosity is easily met here.

### ii. Commonality

Commonality is met where, as here, the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011). The commonality

requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have a class-wide effect. To start, Plaintiffs' and Settlement Class Members' Personal Information was collected and stored by Defendants in the regular course of their businesses. Plaintiffs allege that because of the same Data Security Incident and the same alleged failures by Defendants, each Settlement Class Member's Personal Information was accessed and obtained by cybercriminals. Plaintiffs and Settlement Class Members all allege similar injuries, including actual and attempted misuse of their stolen information, the imminent and substantial risk of harm from future misuse of their data, the loss of privacy from cybercriminals obtaining their Personal Information, out-of-pocket expenses and other losses, and lost time spent responding to the Data Security Incident and mitigating the risk of future misuse of their Personal Information.

Beyond these common questions of fact, Plaintiffs' and Settlement Class Members' claims also present numerous common questions of law, including:

- Whether Defendants owed Plaintiffs and the Settlement Class a duty to reasonably secure their Personal Information;

- Whether Defendants breached their duties by failing to implement and maintain adequate data security;

- Whether Defendants' breach of their duties caused harm to Plaintiffs and the Settlement Class, including the theft of their Personal Information;

- Whether Plaintiffs and the Settlement Class suffered harm due to the theft and potential misuse of their Personal Information; and

- Whether Plaintiffs' and Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and the overwhelmingly similar factual issues presented by Plaintiffs' and Settlement Class Members' claims suffices to meet commonality here.

### iii.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54. "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, Plaintiffs' claims are typical of those of Settlement Class Members because they were all allegedly impacted by the same Data Security Incident and all allege that the Data Security Incident occurred because of the same alleged failures by Defendants. Indeed, Plaintiffs all allege their Personal Information was accessed by an unauthorized third party, and their claims involve the same overarching legal theories. *See Barletti*, 2024 WL 1096531, at *3 (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class member"); *Abubaker v. Dominion Dental USA, Inc.*, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiffs' legal theories do not conflict with those of absentee Settlement Class Members, and Plaintiffs will represent the interests of all Settlement Class Members fairly, because such interests parallel their own. Joint Decl. ¶ 16. As such, Rule

23(a)(3)'s typicality requirement is satisfied.

### iv.  Adequacy

Rule 23(a)(4) requires that the proposed Settlement Class Representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has two parts. The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *In re M3 Power*, 270 F.R.D. at 55. Here, Plaintiffs satisfy both requirements.

First, Plaintiffs' interests align with, and are not adverse or antagonistic to, those of Settlement Class Members. Joint Decl. ¶ 16. Plaintiffs seek to hold Defendants accountable for, among other things, their failures to secure and safeguard Plaintiffs' and Settlement Class Members' Personal Information—the same alleged wrongdoing that caused the Settlement Class to allegedly suffer similar harm. Plaintiffs' interests therefore fully align with those of the Class.

Second, Interim Co-Lead Counsel are qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including cases analogous to this one. Joint Decl. ¶¶ 11–12. Interim Co-Lead Counsel and Plaintiffs have diligently advanced the interests of the Settlement Class, including by investigating the Data Security Incident and resolving the case through Settlement. Indeed, the Court has already appointed Interim Co-Lead Counsel and found that they meet the requirements of Rule 23. Dkt. 65. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.  The Requirements of Rule 23(b) are Satisfied

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior

to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594, 623. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted). Here, Plaintiffs readily meet both requirements.

### i. Predominance

A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 459. Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions . . . [do] not 'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member relies on common factual evidence to establish Defendants' liability. Each Settlement Class Member's claim centers on Defendants' allegedly inadequate data security, which, as Plaintiffs allege, Defendants knew or should have known could result in a data breach and foreseeable harm to Plaintiffs and the Settlement Class. Despite that knowledge, Plaintiffs allege

Defendants knowingly implemented inadequate data security. Compl. ¶¶ 1–15.

Proof of these facts depends on Defendants' knowledge and actions and would establish the existence of Defendants' duties and their breach on a class-wide basis. Thus, those elements of each Settlement Class Member's claims are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *see also In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (granting class certification because common questions predominated, including "whether [defendant] had a duty to protect customer data, whether [defendant] knew or should have known its data systems were susceptible, and whether [defendant] failed to implement adequate data security measures"), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Additionally, common issues concerning causation and damages predominate. Whether Defendants' misconduct caused the Data Security Incident, and the resulting theft of Plaintiffs' and Settlement Class Members' data, will depend on common evidence comparing Defendants' knowledge and acts and their contribution to the Data Security Incident. Further, as other courts have recognized, Plaintiffs can establish damages on a class-wide basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the Data Security Incident. *See, e.g.*, *Green-Cooper*, 73 F.4th at 889–90 (approving plaintiffs' method for measuring class damages resulting from a data breach). Although each individual Settlement Class Member may have some individualized damages, those individual damages generally do not defeat class certification. *See* Fed R. Civ. P. 23 advisory committee notes ("a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."). For these

reasons, the predominance requirement is satisfied.

### ii.  Superiority

The superiority criterion requires that class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts consider: (1) the interests of class members in individually litigating separate actions, (2) the extent and nature of existing litigation, (3) the desirability of concentrating the litigation of the claims in one forum, and (4) the difficulty of managing a class action. *Id.* "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted). When a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

Here, class resolution is superior to other means available to achieve a fair and efficient adjudication of the claims asserted against Defendants. First, the potential damages suffered by the approximately 2,967,396 Class Members are relatively low dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *5 (S.D. Fla. Apr. 10, 2024) (superiority satisfied in data breach settlement because the "amount in dispute for individual class members [was] too small, the technical issues involved [were] too complex, and the expert testimony and document review [was] too costly" and "individual prosecution of claims would be prohibitively expensive, needlessly delay

resolution, and may lead to inconsistent rulings"). Second, resolution of all Settlement Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of 2,967,396 individual lawsuits and promotes judicial economy. *See In re Capital One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient).

Because the Settlement satisfies all of Rule 23's requirements, the Court should conditionally certify the Settlement Class.

## IV.    The Court Should Approve Plaintiffs' Notice Plan for Direct Notice to be Issued to the Settlement Class

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill*, 2015 WL 127728, at *14 (internal quotations omitted). "Robust efforts to reach as many class members as practically possible is required." *Piro v. Exergen Corp.*, 2016 WL 1255630, at *6 (D. Mass. Mar. 29, 2016). When possible, notice should be afforded to class members directly. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Maine 2003) (holding that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

Additionally, the notice must fully inform settlement class members about the action, the

settlement and its benefits, each settlement class member's options to file a claim, opt out of the settlement, or object to it, and the means and deadline to do so. *See Lapan v. Dick's Sporting Goods, Inc.*, 2015 WL 8665204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218–19 (approving a class notice that "described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process. First, the Notice Plan calls for direct notice to Settlement Class Members. *See* S.A., Ex. E. Defendants and their data custodians already identified Settlement Class Members when Defendants investigated the Data Security Incident and issued notice to affected individuals. Under the Notice Plan, Defendants (and their data custodians) will provide that list to the Settlement Administrator, who will then issue notice directly via email, or if no email is available or the provided email cannot receive notice, then by U.S. mail. *Id.* Class Members will than have sixty days to decide whether to object or opt out of the Settlement. *Id.* ¶¶ 2.24–25. This type of direct notice plan is the best practicable notice under Rule 23.

Second, the notices contain sufficient information to apprise recipients of the Settlement, and of their right to submit a claim, opt out of the Settlement and Settlement Class, or object to the Settlement. *Compact Disc*, 216 F.R.D. at 218–19. Specifically, the Long Form Notice describes the Settlement Class, the nature of the case, terms of the Settlement, notifies Settlement Class Members of their rights to submit a claim, opt out of the Settlement, or object to it, and provides Settlement Class Members with opportunities to obtain more information, including

through the Settlement Website. *See* S.A., Exs. A–B (the long form and short form notice).

**V.    The Court should preliminarily appoint Plaintiffs as Settlement Class Representatives**

The Court should also preliminarily appoint Plaintiffs as Settlement Class Representatives. Plaintiffs all diligently advocated on behalf of the Class and prosecuted this action alongside Interim Co-Lead Counsel. They were at all times available to Interim Co-Lead Counsel. Indeed, the combined efforts of Plaintiffs and Interim Co-Lead Counsel ultimately led to the proposed Settlement and the benefits it makes available to the Class. Joint Decl. ¶ 16.

**VI.    The Court should preliminarily appoint Interim Co-Lead Counsel as Class Counsel**

In appointing Class Counsel, courts must consider: (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Interim Co-Lead Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included: (1) investigating the Data Security Incident; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing potential class representatives about their experiences; (4) preparing and filing a class action complaint; (5) opposing the motion to dismiss; (6) preparing and filing an amended class action complaint; (7) engaging in informal discovery with Defendants in advance of the mediation; (8) participating in a mediation session and subsequent settlement discussions; and (9) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. *See* Joint Decl. ¶6. Because Interim Co-Lead Counsel have demonstrated their commitment to litigating these claims, the

Court should appoint John A. Yanchunis of Morgan & Morgan Complex Litigation Group and James J. Pizzirusso of Hausfeld LLP as Class Counsel.

**The Court Should Set the Below Settlement Deadlines**

To facilitate the implementation of the Settlement, the issuance of notice, and the opportunity for Settlement Class Members to submit a claim, opt out of the Settlement, or file an objection, the Court should issue an Order setting the below deadlines:

| **Event** | **Deadline** |
|---|---|
| Defendants Provide Class List to Settlement Administrator | 90 days following entry of Preliminary Approval Order |
| Notice Deadline | 60 days following entry of the Preliminary Approval Order |
| Objection and Opt-Out Deadlines | 60 days after Notice Deadline |
| Claims Deadline | 90 days after Notice Deadline |
| Motion for Attorneys' Fees and Expenses and Service Awards | 21 days prior to the Objection and Opt-Out Deadlines |
| Motion for Final Approval | 30 days prior to the Final Approval Hearing |
| Objections, if any, to Motion for Final Approval | 17 days prior to the Final Approval Hearing |
| Reply in Support of Motion for Final Approval | 10 days prior to the Final Approval Hearing |
| Final Approval Hearing | At least 90 days after the notices are mailed in compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(d); or 14 days after the Claims Deadline, whichever is later. |

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rules 7.1(a)(2), the undersigned certifies that Plaintiffs' counsel and Defendants' counsel have conferred via telephone and video conferencing regarding the relief sought in this motion and the Parties agree on the resolution of the motion.

## CONCLUSION

For the reasons provided above, the Court should preliminarily approve the Settlement,

certify the Settlement Class, approve the Notice Plan, and set the relevant Settlement deadlines.

Dated: February 12, 2025                              Respectfully Submitted,

*/s/ James J. Pizzirusso*
James J. Pizzirusso*
**HAUSFELD LLP**
888 16th St., N.W., Suite 300
Washington, DC 20006
T: (202) 540-7200
jpizzirusso@hausfeld.com

*/s/ John Yanchunis*
John A. Yanchunis*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
T: (813) 223-5505
jyanchunis@forthepeople.com

***Admitted Pro Hac Vice***

***Interim Co-Lead Counsel for the Class***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed and served via the Court's CM/ECF electronic

filing system and thus served on all counsel of record.

*/s/ John Yanchunis*