**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE HARVARD PILGRIM DATA SECURITY INCIDENT LITIGATION | CASE NO. 1:23-cv-11211-NMG |

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement is made by and between, as hereinafter defined: (a) the Representative Plaintiffs,[1] on behalf of themselves and the Settlement Class ("Plaintiffs" or "Representative Plaintiffs"); and (b) Defendants Harvard Pilgrim Health Care, Inc. ("Harvard Pilgrim") and Point32Health, Inc. ("Point32Health") (together, "Defendants"). This Agreement fully and finally resolves and settles any and all claims that are, were, or could have been asserted in the litigation styled *In Re Harvard Pilgrim Data Security Incident Litigation*, Case No. 1:23-cv-11211-NMG, pending in the United States District Court for the District of Massachusetts, as set forth herein.

## 1.  Recitals

1.1.  On or around April 17, 2023, Defendants discovered that third-party cybercriminals had gained unauthorized access to Harvard Pilgrim's systems (the "Data Security "Incident").

1.2.  An investigation determined that certain files, which may have included Settlement Class Members' Personal Information, were copied and taken from Harvard Pilgrim's systems between March 28, 2023 and April 17, 2023.

---

[1] All capitalized terms are defined in Section 2 below.

1.3.    On May 24, 2023, Harvard Pilgrim began providing notice of the Data Security Incident, and ultimately provided notice to a total notice population of 2,967,396 individuals.

1.4.    On May 30, 2023, Representative Plaintiffs Girard Patterson and Maribeth Murphy filed a putative class action complaint in the United States District Court for the District of Massachusetts, asserting claims arising out of the Data Security Incident.

1.5.    On June 22, 2023, Representative Plaintiffs moved to consolidate related actions, which was ordered by this Court on July 13, 2023.

1.6.    On March 12, 2024, Representative Plaintiffs' Counsel were appointed Interim Co-Lead Counsel.

1.7.    On April 26, 2024, Representative Plaintiffs filed an Amended Consolidated Class Action Complaint, which, among other changes, consolidated related actions filed in state and federal court in the District of Massachusetts.

1.8.    On June 10, 2024, Defendants moved to dismiss the Amended Consolidated Class Action Complaint for failure to state a claim.  Plaintiffs filed an Opposition to the Motion to Dismiss on July 29, 2024.

1.9.    On September 3, 2024, the Parties moved to stay the proceedings, pending mediation. This Court stayed the consolidated Action on September 4, 2024.

1.10.    On October 28, 2024, the Parties engaged in a full-day, in-person mediation session before former United States Magistrate Judge Margaret A. Nagle (Ret.), an experienced mediator jointly selected by the Parties. Over the course of the mediation, the Parties engaged in arm's length negotiations, and, with the assistance of Judge Nagle, the Parties reached an agreement in principle to settle and resolve the Action.

1.11.    After the mediation concluded, the Parties executed a written Term Sheet. Once this Agreement is fully executed, it supersedes and replaces all terms in the Parties' written Term Sheet.

1.12.    Defendants deny all material allegations in the Amended Consolidated Class Action Complaint, and all prior complaints, deny wrongdoing of any kind, deny liability on any claims asserted, and further specifically deny liability for all statutory, common law, and contract-related claims alleging they had inadequate data security or failed to properly protect any personal data or respond appropriately to the Data Security Incident.

1.13.    The Parties recognize the expense and risk inherent in continued litigation of the Action through further motion practice, discovery, trial, and any possible appeals. The Parties have considered the uncertainty of the outcome of further litigation, and the expense, difficulties, and delays inherent in such litigation. The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto. The Parties have determined that the settlement set forth in this Agreement is in their respective best interests and that the Agreement is fair, reasonable, and adequate. The Parties have therefore agreed to the settlement set forth in the terms and provisions of this Agreement, subject to Court approval.

1.14.    It is the intention of the Parties to resolve the disputes and claims as set forth in the terms below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

2. **Definitions**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1.    "Action" means and refers to *In Re Harvard Pilgrim Data Security Incident Litigation*, Case No. 1:23-cv-11211-NMG (D. Mass.).

2.2.    "Administration and Notice Costs" means all reasonable costs and expenses incurred by the Settlement Administrator in carrying out its duties under this Agreement, including all costs and expenses incurred in connection with implementing and executing the Notice Plan and notice required by the Class Action Fairness Act.

2.3.    "Agreement" or "Settlement Agreement" or "Settlement" means this Class Action Settlement Agreement and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the settlement of the Action between them and which is subject to approval by the Court.

2.4.    "Amended Complaint" means the Amended Consolidated Class Action Complaint, at Docket Entry Number 69, filed in the Action on April 26, 2024.

2.5.    "Approved Claims" means Settlement Claims completed using a Claim Form, submitted by the Claims Deadline by a Settlement Class Member, and found to be valid and in an amount approved by the Settlement Administrator.

2.6.    "Attorneys' Fees" means the attorneys' fees that Interim Co-Lead Counsel request the Court to approve for payment from the Settlement Fund as compensation for work in prosecuting and settling the Action.

2.7.    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the United States federal government.

2.8.    "Claim Form" means the claim form attached as Exhibit C, or a claim form approved by the Court that is substantially similar to Exhibit C.

2.9.    "Claims Deadline" means the deadline by which Settlement Class Members must submit any Settlement Claims. Settlement Claims submitted after the Claims Deadline will not be timely, will not qualify for approval, and will be rejected. The Claims Deadline shall be set by the Court in the Preliminary Approval Order and shall be ninety (90) days after the Notice Date.

2.10.   "Court" means the United States District Court for the District of Massachusetts, where the Action is pending.

2.11.   "Data Security Incident" means the unauthorized third-party access to Harvard Pilgrim's network that was detected by Defendants on or around April 17, 2023, and which is the subject of the Action.

2.12.   "Defendants" means Harvard Pilgrim Health Care, Inc. and Point32Health, Inc., collectively.

2.13.   "Defendants' Counsel" means the undersigned attorneys for Defendants Harvard Pilgrim Health Care, Inc. and Point32Health, Inc., from the law firm of Jones Day.

2.14.   "Effective Date" means the date set forth in Section 14 of this Agreement.

2.15.   "Entity" means any corporation, partnership, limited liability company, association, trust, or other organization of any type.

2.16.   "Expenses" means the reasonable costs and expenses incurred in litigating the Action that Interim Co-Lead Counsel request the Court to approve for payment from the Settlement Fund.

2.17.   "Final Approval" means entry of a Final Approval Order and Judgment.

2.18.   "Final Approval Hearing" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment. The Final Approval Order and Judgment shall be entered no earlier than ninety (90) days after notices are mailed to ensure compliance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

2.19.   "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which, among other things, finally approves the Agreement, finally certifies the Settlement Class for settlement purposes, dismisses all claims in the Action against Defendants with prejudice, and releases the Released Parties from the Released Claims, materially in the form of the proposed Final Approval Order and Judgment attached as Exhibit H.

2.20.   "Judgment" means the Final Approval Order and Judgment.

2.21.   "Long Notice" means the long form notice attached as Exhibit B, or substantially similar to the long form notice attached as Exhibit B.

2.22.   "Notice Date" means the date by which notice will be fully commenced, which shall be sixty (60) days after the Court enters the Preliminary Approval Order.

2.23.   "Notice Plan" means the settlement notice program attached as Exhibit D, or substantially similar to the settlement notice program attached as Exhibit D, to be presented to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.24.   "Objection Deadline" means the deadline by which objections to the Settlement must be filed in the Action's electronic docket. Such deadline shall be sixty (60) days after the Notice Date.

2.25.   "Opt-Out Deadline" means the deadline by which requests for exclusion from the Settlement must be postmarked or submitted electronically as set forth in the Preliminary Approval Order. Such deadline shall be sixty (60) days after the Notice Date.

2.26.   "Parties" means the Representative Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants Harvard Pilgrim Health Care, Inc. and Point32Health, Inc.

2.27.   "Parties' Counsel" means Interim Co-Lead Counsel and Defendants' Counsel.

2.28.   "Person(s)" means any individual, corporation, trust, partnership, limited liability company or other legal entity and their respective predecessors, successors, or assigns.

2.29.   "Personal Information" is intended to be broadly construed and includes any information that could be used to identify, locate, or contact a person (whether on its own or in combination with other information). The term Personal Information also includes, without limitation: names, addresses, dates of birth, Social Security numbers, financial information, driver's license numbers, government-issued identification numbers, health information (expressly including but not limited to Protected Health Information as defined by the Health Insurance Portability and Accountability Act), and any and all other personally identifiable information. For the avoidance of doubt, the term Personal Information includes all information compromised, accessed, exfiltrated, or otherwise impacted as a result of the Data Security Incident.

2.30.   "Plaintiffs" or "Representative Plaintiffs" means Madeline Docanto, Justin Dyer, Svea Elaine, Ruth Kidder, Daniel Neal, Danielle Olson, Girard Patterson, Tanya Peckham, Margaret Donovan, Angela Rowntree, and Tracie Wilson.

2.31.   "Plaintiffs' Counsel," "Representative Plaintiffs' Counsel" or "Interim Co-Lead Counsel" or "Class Counsel" means John A. Yanchunis of Morgan & Morgan and James J. Pizzirusso of Hausfeld LLP.

2.32.   "Preliminary Approval Order" means the Court's order preliminarily approving the Settlement Agreement and, among other things, ordering that notice be provided to the Settlement Class, and in the form of, or materially in the form of, the proposed Preliminary Approval Order attached as Exhibit E.

2.33.   "Related Entities" means Defendants' past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint ventures, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers and reinsurers, past, present, and future, and all persons acting under, by or through, or in concert with any of them, other than any individual who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads nolo contendere to any such charge.

2.34.   "Released Claims" means any and all claims, defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, remedies, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including but not limited to monetary sanctions, penalties or damages for contempt, injunctive or declaratory relief, mandamus, rescission, reformation, restitution, disgorgement, constructive trust, general, direct, compensatory, exemplary, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, statutory damages, penalties, interest, attorneys' fees, costs, or expenses, whether known or unknown (including Unknown Claims), suspected or unsuspected, existing or potential, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to or are connected in any way with the Data Security Incident, any legal, factual, or other allegations in the Action, or any theories of recovery that were, or could have been, raised at any point in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal, or administrative body (including but not limited to any state, local, or federal regulatory body).

For the avoidance of doubt, Released Claims are to be construed broadly and include, without limitation, any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.* and any similar statutes in effect in the United States or in any state in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust

enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, intrusion upon seclusion, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under the constitution of the United States or of any state in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court or administrative agency of the United States, for damages, injunctive relief, restitution, mandamus, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

2.35.    "Released Party" or "Released Parties" means Defendants, the Related Entities and each of their past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint venturers, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers and reinsurers, past, present, and future, and all persons acting under, by or through, or in

concert with any of them, and includes without limitation, any Person related to any such entities who is, or could have been named as a defendant in the Action.

2.36.    "Releasing Party" or "Releasing Parties" means the Representative Plaintiffs and all Settlement Class Members who do not timely and validly opt out of the Settlement.

2.37.    "Remainder Funds" means any funds that remain in the Settlement Fund after all deductions from the Settlement Fund provided for in this Settlement Agreement. The funds remaining in the Settlement Fund after settlement payments have been distributed and the time for cashing and/or depositing checks has expired will be Remainder Funds. The Remainder Funds will be sent to one or more Court-approved charitable organization(s) as a cy pres distribution. Class Counsel will recommend the entity or entities to the Court that will be the recipient(s) of the cy pres distribution.

2.38.    "Service Awards" means the amount awarded by the Court and paid to the Representative Plaintiffs in recognition of their role in the Action, as set forth in Section 4 of this Settlement Agreement.

2.39.    "Settlement Administrator" means Simpluris. A different Settlement Administrator may be substituted if approved by order of the Court.

2.40.    "Settlement Claims" means any claim or request for settlement benefits provided for in this Settlement Agreement.

2.41.    "Settlement Class" means all individuals residing in the United States whose Personal Information was impacted by the Data Security Incident—including all individuals who were notified of the Data Security Incident. The Settlement Class specifically excludes: (1) any Judge or Magistrate Judge presiding over the Action, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers,

directors, members and shareholders of the Defendants; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; (4) any persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Parties' Counsel; and (6) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads nolo contendere to any such charge. Defendants represent that the Settlement Class contains approximately 2,967,396 individuals.

2.42.   "Settlement Class Member" means any person who falls within the definition of Settlement Class.

2.43.   "Settlement Fund" means the sixteen million United States Dollars ($16,000,000.00) that Defendants shall cause to be paid pursuant to Section 3 of this Settlement Agreement.

2.44.   "Settlement Fund Account" means the account described in Section 3.2 of this Settlement Agreement.

2.45.   "Settlement Website" means the Internet website, at URL address www.HarvardPilgrimDataIncidentSettlement.com, to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and any requests for exclusion from the Settlement, and provides access to relevant case documents, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

2.46.   "Short Notice" means the short form notice attached as Exhibit A or substantially similar to the short form notice attached as Exhibit A.

2.47.   "Taxes" means (i) any applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Parties or the Parties' Counsel with respect to any income or gains earned by or in respect of the Settlement Fund; (ii) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities, and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

2.48.   "Unknown Claims" means any and all Released Claims that any Representative Plaintiff or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE**

**MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Representative Plaintiffs and Interim Co-Lead Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims is a material element of the Settlement Agreement of which this release is a part.

**3. <u>Settlement Fund</u>**

3.1.    The Settlement Fund shall consist of a non-reversionary fund of sixteen million United States Dollars ($16,000,000.00), which shall be paid as follows:

3.1.1.    Within ten (10) Business Days of the Preliminary Approval Order, Defendants will pay or cause to be paid eight million United States Dollars ($8,000,000.00) into the Settlement Fund Account to pay for Administration and Notice Costs, which amount will be credited towards the $16,000,000.00 total amount of the Settlement Fund.

3.1.2.    Within ten (10) Business Days of the Effective Date, Defendants shall deposit or cause to be deposited the remaining balance of the Settlement Fund (eight million United States Dollars ($8,000,000.00)) into the Settlement Fund Account.

3.2.    The Settlement Fund shall be deposited into an interest-bearing Qualified Settlement Fund Account, established and maintained by the Settlement Administrator, for the benefit of the Settlement Class.

3.3.    The Settlement Fund shall be used to pay for: (i) Administration and Notice Costs; (ii) Approved Claims; (iii) Service Awards for the Representative Plaintiffs; and (iv) Attorneys' Fees and Expenses approved by the Court. In no event shall Defendants be obligated to pay more than sixteen million United States Dollars ($16,000,000.00) in connection with the Settlement Agreement

3.4.    All Taxes relating to the Settlement Fund Account shall be paid out of the Settlement Fund Account, shall be considered to be an Administration and Notice Cost of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund Account shall indemnify and hold harmless the Parties and the Parties' Counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

## 4. <u>Settlement Benefits</u>

4.1.    All Settlement Class Members who submit a valid and timely Approved Claim using the Claim Form, which is attached as Exhibit C to this Settlement Agreement, are eligible to receive:

4.2.    <u>Reimbursement for Out-of-Pocket Losses and Attested Time</u>. All Settlement Class Members may submit a claim for Out-of-Pocket Losses and/or Attested Time as set forth herein up to a total of two thousand five hundred United States Dollars ($2,500.00) per individual. The Settlement Fund will be used to pay valid and timely submitted claims for each of the following categories:.

4.2.1.    "Out-of-Pocket Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member in responding to the Data Security Incident and/or notice of the Data Security Incident. Out-of-Pocket Losses may include, without limitation, the following: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs.

4.2.2.    Settlement Class Members who elect to submit a claim for reimbursement of Out-of-Pocket Losses must provide to the Settlement Administrator the information required to

evaluate the claim as set forth in the Claim Form, including but not limited to: (1) the Settlement Class Member's name and current address; (2) documentation supporting the unreimbursed cost(s), loss(es), or expenditure(s); and (3) a brief description of the documentation describing the nature of the cost(s), loss(es), or expenditure(s), if the nature of the cost(s), loss(es), or expenditure(s) are not apparent from the documentation alone. Documentation supporting Out-of-Pocket Losses may include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the cost(s), loss(es), or expenditure(s) incurred. "Self-prepared" documents, such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

4.2.3.   Whether or not they incurred Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to seven (7) hours of time spent responding to the Data Breach and/or notice of the Data Breach at a rate of thirty United States Dollars ($30.00) per hour by providing an attestation and a brief description of : (1) the actions taken in response to the Data Breach and/or notice of the Data Breach; and (2) the total time associated with these actions ("Attested Time").

4.3.   <u>Reimbursement for "Extraordinary" Losses and "Extraordinary" Attested Time</u>. In addition to submitting a claim for Out-of-Pocket Losses and/or Attested Time, Settlement Class Members who believe they have suffered identity theft, fraud, or other such losses may submit a claim for Extraordinary Losses and/or Extraordinary Attested Time up to thirty-five thousand United States Dollars ($35,000.00) per individual, in the aggregate as set forth herein. The total amount of compensation that can be claimed for Out-of-

Pocket Losses, Attested Time, Extraordinary Losses, and Extraordinary Attested Time cannot exceed thirty-five thousand United States Dollars ($35,000.00) per individual.

4.3.1.  "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Security Incident, and are costs, losses, or expenditures that are not reimbursable as Out-of-Pocket Losses. Extraordinary Losses may include, without limitation, any unreimbursed costs, losses, or expenditures incurred as a result of identity theft, fraud, falsified tax returns, real estate title fraud, financial fraud, government benefits fraud, or other misuse of the Settlement Class Member's Personal Information.

4.3.2.  Settlement Class Members who elect to submit a claim for reimbursement of Extraordinary Losses must provide to the Settlement Administrator all information required to evaluate the claim as set forth in the Claim Form, including but not limited to: (1) the Settlement Class Member's name and current address; (2) documentation supporting the unreimbursed cost(s), loss(es), or expenditure(s); and (3) a brief description of the documentation describing the nature of the cost(s), loss(es), or expenditure(s), if the nature of the cost(s), loss(es), or expenditure(s) is not apparent from the documentation alone. Documentation supporting Extraordinary Losses may include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the unreimbursed cost(s), loss(es), or expenditure(s) incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

4.3.3.    Extraordinary Losses will be deemed "fairly traceable" to the Data Security Incident if: (1) the unreimbursed cost(s), loss(es), or expenditure(s) were incurred in responding to the Data Security Incident and/or notice of the Data Security Incident; and (2) the Personal Information used to commit identity theft, fraud, or other misuse consisted of the same type of Personal Information that was provided to Defendants prior to the Data Security Incident or that can be reasonably obtained on the basis of Personal Information that was provided to Defendants prior to the Data Security Incident.

4.3.4.    Whether or not they incurred Extraordinary Losses and whether or not they made a claim for Out-of-Pocket Losses or Attested Time, Settlement Class Members may also submit a claim for up to twenty (20) hours of time spent remedying identity theft, fraud, or other misuse of their Personal Information fairly traceable to the Data Security Incident at a rate of thirty United States Dollars ($30.00) per hour by providing an attestation and a brief description of: (1) the actions taken to remedy identity theft, fraud, or other misuse of their Personal Information; and (2) the total time associated with each action ("Extraordinary Attested Time"). The combined total of Attested Time and Extraordinary Attested Time that can be claimed by a Settlement Class Member cannot exceed twenty (20) hours.

4.4.    <u>Alternative Cash Payment</u>. Settlement Class Members may make a claim for a pro rata Alternative Cash Payment in lieu of Out-of-Pocket Losses and/or Attested Time in an estimated amount of one hundred and fifty United States Dollars ($150.00) ("Alternative Cash Payment"), which may be increased or decreased depending upon the number of claims made and approved. Settlement Class Members who make a claim for a pro rata Alternative Cash Payment, shall not be entitled to make a claim for Out-of-Pocket Losses

and/or Attested Time as described above. Payments for approved Alternative Cash Payment claims shall be made from the Settlement Fund.

4.5.    <u>Service Awards.</u> Subject to Court approval, Defendants shall not object to a request for a Service Award in the amount of two thousand United States Dollars ($2,000.00) to each of the Representative Plaintiffs, to be paid from the Settlement Fund.

4.6.    <u>Credit Monitoring Services.</u> Settlement Class Members, regardless of whether they make a claim for Out-of-Pocket Losses, Attested Time, Extraordinary Losses, and/or Extraordinary Attested Time, may elect to enroll in three (3) years of identity theft protection and credit monitoring services that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's Personal Information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. These services will be made available to all Settlement Class Members who choose to enroll, regardless of whether they submit a claim for Out-of-Pocket Losses, Attested Time, Extraordinary Losses, and/or Extraordinary Attested Time. A unique redemption code allowing Settlement Class Members to enroll in these services will be sent to each Settlement Class Member who submits an Approved Claim for such services. The cost of providing the credit monitoring services described herein shall be paid from the Settlement Fund. For the avoidance of doubt, under no circumstances will Defendants be obligated to pay more than the Settlement Fund.

4.7.    Settlement Class Members requesting any benefits under the Settlement must complete and submit either a hard copy or online Claim Form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. For Settlement

Class Members who submit a claim for Out-of-Pocket Losses, Attested Time, Extraordinary Losses, or Extraordinary Attested Time, the Claim Form must be verified by the Settlement Class Member with an attestation that the Settlement Class Member believes that the claimed time, unreimbursed cost(s), loss(es), and/or expenditure(s) were incurred as a result of the Data Security Incident and/or notice of the Data Security Incident. Settlement Class Members who received written notice of the Data Security Incident must include their Unique Class Member ID on their Claim Form. The Unique Class Member ID can be found on the Short Form Notice.

4.8.    <u>Pro Rata Increase/ Reduction</u>. If the total amount of Approved Claims submitted under Section 4, after accounting for Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court, exceeds the amount of the Settlement Fund, then Approved Claims under Section 4 shall be reduced on a pro rata basis such that the total aggregate amount of Approved Claims under Section 4, after accounting for Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court, does not exceed the amount of the Settlement Fund. If the total amount of Approved Claims submitted under Section 4, after accounting for Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court, is less than the amount of the Settlement Fund, then Approved Claims under Section 4 shall be increased on a pro rata basis such that the total aggregate amount of Approved Claims under Section 4, after accounting for Administration and Notice Costs, Service Awards, and Attorneys' Fees and Expenses as approved by the Court, equals (as reasonably close as possible and without exceeding) the amount of the Settlement Fund. The Settlement Administrator shall reasonably

exercise its discretion for purposes of implementing any pro rata increase or decrease provided herein to account for estimated, but not yet incurred, Administration and Notice Costs. For the avoidance of doubt, in no event shall Defendants' liability or obligation under this Settlement Agreement exceed the Settlement Fund.

4.9.    <u>Residual Cash Payment</u>. Approved Claims will be paid via electronic payment or check mailed to the Settlement Class Member. Settlement Class Members will have ninety (90) days to cash the checks or electronically receive the payments, after which any uncashed checks will be void and the ability to receive electronic payments will expire. If the aggregate value of void checks and lapsed electronic payments makes it economically feasible, such funds (after decreasing the total by the cost of any anticipated tax reporting requirements and other ancillary expenses) will be disbursed pro rata via a second round of payments issued to those Settlement Class Members who successfully received electronic payments or who cashed checks issued during the first round of disbursement. After ninety (90) days of the second disbursement, any uncashed checks will be void and the ability to receive electronic payments will also expire. The aggregate value of void checks and unclaimed electronic payments after the second disbursement (or, if there is no second disbursement, after the first disbursement) and/or remaining funds following the preparation of any required tax documents will be paid to increase the length of credit monitoring services for those Settlement Class Members who enroll in those services, if possible, or if not, to one or more Court-approved charitable organization(s) recommended by Class Counsel as a *cy pres* distribution, subject to approval by the Court. However, if a second disbursement is not economically feasible, any funds remaining in the Settlement Fund will be given directly as a *cy pres* distribution, subject

to approval by the Court. For the avoidance of doubt, following payment of the Settlement Fund monies as described in Section 3 of this Settlement Agreement, Defendants shall have no responsibility, financial obligation, or liability whatsoever with respect to payment of federal, state, and local income, employment, unemployment, excise, and any other Taxes, penalties, interest, or other charges related to Taxes imposed on the Settlement Fund Account or its disbursements.

**5.  Data Security Enhancements**

5.1.    Defendants shall provide a declaration describing data security enhancements made since the Data Security Incident.  This declaration will be confidential, as it would be detrimental to Defendants, the Settlement Class, and Harvard Pilgrim members, among others, if specific security protocols Defendants have in place were publicly disclosed. The Parties agree that this declaration need not be filed publicly unless specifically ordered by the Court.  If the Court orders such declaration to be filed, the Parties agree they will seek to file it under seal with the maximum safeguards in place.

**6.  Absence of Evidence that Information Affected by the Incident Was Disclosed by the Threat Actor**

6.1.    Defendants shall provide a confidential declaration addressing whether they were aware of evidence that the data impacted by the Data Security Incident was sold or transferred to a third party. (Exhibit G)

**7.  Financial Hardships**

7.1.    Defendants shall provide a declaration outlining their financial circumstances since the Data Security Incident. (Exhibit F)

**8.  Preliminary Approval Order and Notice of Final Approval Hearing**

8.1.    As soon as practicable following execution of this Settlement Agreement, Representative Plaintiffs and Interim Co-Lead Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the Settlement with the Court requesting entry of a Preliminary Approval Order substantially in the form attached hereto as Exhibit E, requesting, among other things:

8.1.1.    Certification of the Settlement Class for settlement purposes only;

8.1.2.    Preliminary approval of the Settlement Agreement;

8.1.3.    Appointment of Interim Co-Lead Counsel as Class Counsel;

8.1.4.    Appointment of Representative Plaintiffs as Settlement Class Representatives;

8.1.5.    Approval of a Notice Plan substantially similar to the one attached hereto as Exhibit D;

8.1.6.    Approval of a Short Notice substantially similar to the one attached hereto as Exhibit A;

8.1.7.    Approval of a Long Notice substantially similar to the one attached hereto as Exhibit B;

8.1.8.    Approval of a Claim Form substantially similar to the one attached hereto as Exhibit C; and

8.1.9.    Appointment of the Settlement Administrator.

8.2.    The Long Notice, Short Notice, and Claim Form shall be reviewed by the Settlement Administrator and may be revised as agreed by the Parties prior to submission to the Court for approval. The duties of the Settlement Administrator shall include:

8.2.1.    Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. Specifically, the Settlement Administrator, in its

sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Settlement Class Member; (ii) the claimant has provided all information required to complete the Claim Form by the Claims Deadline, including any documentation that may be necessary to reasonably support amounts claimed as Out-of-Pocket Losses, Attested Time, Extraordinary Losses, and/or Extraordinary Attested Time; and (iii) the information submitted would lead a reasonable person to conclude, for a claim for Out-of-Pocket Losses, Attested Time, Extraordinary Losses, and/or Extraordinary Attested Time, that the alleged cost(s), loss(es), expenditure(s), and/or time are fairly traceable to the Data Security Incident.

8.2.2.  The Settlement Administrator may at any time (but is not required to) request from the claimant (including via email) supplemental claim information as the Settlement Administrator may reasonably require to evaluate the Settlement Claim, including documentation requested on the Claim Form and information regarding the claimed cost(s), loss(es), expenditure(s), and/or time. If supplemental claim information is requested, the Settlement Administrator shall give the claimant reasonable time, as determined by the Settlement Administrator's discretion but not exceeding thirty (30) days, to provide the requested supplemental claim information before rejecting the claim.

8.2.3.  Establishing and maintaining a post office box for, among other things, receiving requests for exclusion from the Settlement;

8.2.4.  Establishing and maintaining a Settlement website;

8.2.5.  Responding to Settlement Class Member inquiries via U.S. mail, email, and/or telephone;

8.2.6.  Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries;

8.2.7.  Paying all Taxes relating to the Settlement Fund and Settlement Fund Account;

8.2.8.  Receiving and processing all written requests for exclusion from the Settlement and providing copies thereof to the Parties' Counsel. If the Settlement Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to the Parties' Counsel;

8.2.9.  Providing weekly reports to the Parties' Counsel summarizing the number of claims, written requests for exclusion, objections, and any other information requested by the Parties' Counsel;

8.2.10.  Within five (5) Business Days after the Opt-Out Deadline, providing a final report to the Parties' Counsel summarizing the number of written requests for exclusion (i.e., requests to opt out of the Settlement), a list of all individuals who have timely and validly excluded themselves from the Settlement in accordance with the requirements of the Settlement, and any other information requested by the Parties' Counsel;

8.2.11.  After the Effective Date, processing and transmitting any and all distributions to Settlement Class Members;

8.2.12.    Prior to the Final Approval Hearing, preparing and executing an affidavit or declaration to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement;

8.2.13.    As specified in Section 3.3, all Administration and Notice Costs incurred by the Settlement Administrator or otherwise in connection with administering the Settlement shall be paid from the Settlement Fund; and

8.2.14.    Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

8.3.    Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

8.4.    Interim Co-Lead Counsel shall request that, after notice is completed, the Court hold a Final Approval Hearing and grant final approval of the Settlement set forth herein.

## 9. **Notice Plan**

9.1.    The Settlement Administrator shall be responsible for implementing and executing the Notice Plan once approved by the Court. Within fourteen (14) days after the Court's entry of a Preliminary Approval Order, Defendants shall provide the Settlement Administrator with all contact information for Settlement Class Members, including their U.S. mail addresses.

9.2.    As specified in Section 3.3, all costs incurred by the Settlement Administrator or otherwise relating to providing notice to Settlement Class Members shall be paid from the Settlement Fund.

## 10. **CAFA Notice**

10.1.    Defendants will serve or cause to be served the notice required by the Class Action

Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after this Agreement

is filed with the Court. The cost of providing notice pursuant to 28 U.S.C. § 1715 shall

be paid from the Settlement Fund as an Administration and Notice Cost.

**11. <u>Opt-Outs</u>**

11.1.    Each individual who wishes to exclude themselves from the Settlement must submit a

written request for exclusion to the Settlement Administrator, which shall be postmarked

or submitted electronically no later than the Opt-Out Deadline.

11.2.    The written request for exclusion must:

(i)      Identify the case name and number of the Action;

(ii)     Identify the name and address of the individual seeking exclusion from the
         Settlement;

(iii)    Be personally signed by the individual seeking exclusion;

(iv)     Include a statement clearly indicating the individual's intent to be
         excluded from the Settlement; and

(v)      Request exclusion only for that one individual whose personal signature
         appears on the request.

11.3.    Opt-Out requests seeking exclusion on behalf of more than one individual shall be

deemed invalid by the Settlement Administrator.

11.4.    Any individual who submits a valid and timely request for exclusion in the manner

described herein shall not: (i) be bound by any orders or judgments entered in connection

with the Settlement Agreement; (ii) be entitled to any relief under, or be affected by, the

Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or

(iv) be entitled to object to any aspect of the Settlement Agreement.

11.5.    Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class. Any individuals who submit a valid and timely request to be excluded from the Settlement Class, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All individuals falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth herein shall be bound by the terms of this Settlement Agreement.

11.6.    Interim Co-Lead Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class.

## 12. Objections

12.1.    Any Settlement Class Member who wishes to object to the Settlement must submit a written objection electronically or by first-class postage prepaid to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

12.2.    The written objection must include:

    a.    the objector's full name, mailing address, telephone number, and email address (if any);

    b.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

    c.    the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

    d.    a list of all expert witnesses who will be called to testify at the Final Approval Hearing in support of the objection (if any);

e.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

f.     the objector's signature (or, if represented by counsel, an attorney's signature).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

12.3.    Any Objector may be subject to discovery upon order of the Court.

12.4.    Any Settlement Class Member who fails to object to the Settlement in the manner described herein, in the Preliminary Approval Order, and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement Agreement or the terms of the Settlement Agreement by appeal or any other means.

**13. Attorneys' Fees and Expenses**

13.1.    The Parties did not discuss the payment of Attorneys' Fees and Expenses until after the substantive terms of the Settlement Agreement had been agreed upon, other than that the Settlement Fund would be used to pay reasonable Attorneys' Fees and Expenses as may be agreed to by Defendants and Interim Co-Lead Counsel, or, in the event of no agreement, then as ordered by the Court. Defendants and Interim Co-Lead Counsel have agreed to the following:

13.2.    Defendants agree not to oppose any request to the Court by Interim Co-Lead Counsel for an award of Attorneys' Fees in an amount not to exceed 30% of the Settlement Fund and Expenses in an amount not to exceed fifty thousand United States Dollars ($50,000.00), subject to Court approval. Any request for Attorneys' Fees and Expenses must be filed

with the Court no later than thirty (30) days before the Objection Deadline. The Settlement Administrator shall pay any Attorneys' Fees and Expenses approved by the Court, from the Settlement Fund, within three (3) days after the Effective Date.

13.3.    If this Agreement is terminated or otherwise does not become final (e.g., disapproval by the Court or any other court of competent jurisdiction), Defendants shall have no obligation to pay Attorneys' Fees or Expenses and shall only be required to pay any Administration and Notice Costs already incurred. Under no circumstances will Interim Co-Lead Counsel or any Settlement Class Member be liable for any Administration and Notice Costs.

13.4.    Any award of Attorneys' Fees and Expenses are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees and Expenses awarded by the Court to Interim Co-Lead Counsel or Representative Plaintiffs shall affect the finality of the Settlement or constitute grounds for cancellation or termination of this Settlement Agreement.

## 14. Conditions of Settlement, Effective Date, Cancellation or Termination

14.1.    The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

14.1.1.    The Parties execute this Agreement;

14.1.2.    The Court enters the Preliminary Approval Order without material change to the Parties' agreed-upon proposed Preliminary Approval Order attached as Exhibit E, which shall include approval of the Notice Plan;

14.1.3.   Notice is provided to the Settlement Class in accordance with the Preliminary Approval Order and Notice Plan;

14.1.4.   The Court enters the Final Approval Order and Judgment;

14.1.5.   The Final Approval Order and Judgment has become final because: (i) no objections to the Settlement have been filed and therefore no individual has standing to appeal the Final Approval Order; (ii) if an individual has objected, the time for appeal, petition, rehearing, or other review has expired; or (iii) if any appeal, petition, or request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired.

14.1.6   Defendants may, in their sole discretion, terminate this Agreement if more than a specified number of Settlement Class Members submit valid and timely requests to exclude themselves from the Settlement, as agreed to by the Parties in a separate writing that has been executed by them contemporaneously with the execution of this Agreement, and, if requested, submitted to the Court for in camera review.  If Defendants elect to terminate the Settlement pursuant to this Paragraph 14.1.6, it shall provide written notice to Class Counsel no later than fifteen (15) Business Days after the Opt-Out Deadline.

14.2.   In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement is terminated or void in accordance with its terms: (i) the Parties shall be restored to their respective positions in the Action as if the Settlement Agreement had

never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue) and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to the Parties; and (ii) the terms and provisions of the Settlement Agreement shall be void and have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of Attorneys' Fees and Expenses shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendants shall be obligated to pay amounts already billed or incurred for Administration and Notice Costs and shall not, at any time, seek recovery of the same from any other Party in the Action or from counsel to any other Party to the Action.

14.3.   This Settlement Agreement may be terminated and/or cancelled by any of the Parties if: (i) the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily approve or finally approve the Settlement Agreement, apart from the award of Attorneys' Fees and Expenses; (ii) an appellate court reverses the Preliminary Approval Order and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes,

the proposed Preliminary Approval Order, the Preliminary Approval Order, or the Settlement Agreement, apart from the award of Attorneys' Fees and Expenses.

**15. <u>Release</u>**

15.1.    Upon the Effective Date, each Settlement Class Member, including the Representative Plaintiffs, shall be deemed to have, and by operation of the Final Approval Order and Judgement shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged Defendants, the Related Entities, and the Released Parties from all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including the Representative Plaintiffs, shall, either directly, indirectly, representatively, on their own behalf or on behalf of any class or other person or entity, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action, regulatory action, arbitration, or court or other proceeding in this or any other forum (other than participation in the Settlement as provided herein) in which any Released Claim is asserted.

**16. <u>Notices</u>**

16.1.    All notices to Interim Co-Lead Counsel provided for in this Agreement shall be sent by email and First-Class U.S. mail to the following:

John A. Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL 33602
T: (813) 318-5169
E: JYanchunis@forthepeople.com

James J. Pizzirusso
HAUSFELD LLP

888 16th St. NW, Suite 300
Washington, DC 20006
T: (202) 540-7200
E: jpizzirusso@hausfeld.com

16.2.    All notices to Defendants or Defendants' Counsel provided for in this Agreement shall

be sent by email and First-Class U.S. mail to the following:

Michael T. Marcucci
Jenna L. LaPointe
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110-1781
T: (617) 960-3939
E: mmarcucci@jonesday.com
E: jlapointe@jonesday.com

John A. Vogt
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
T: (949) 553-7516
E: javogt@jonesday.com

16.3.    All notices to the Settlement Administrator provided for in this Agreement shall be sent

by email to info@HarvardPilgrimDataIncidentSettlement.com or First-Class U.S. mail

to the following:

PO Box 25245
Santa Ana CA 92799

16.4.    The notice recipients and addresses designated in this Section may be changed by written

notice posted to the Settlement website.

**17. Miscellaneous Provisions**

17.1.    The Parties: (i) acknowledge that it is their intent to consummate this Settlement

Agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Settlement Agreement; and (iii) agree to

exercise their commercially reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

17.2.    The Parties intend for this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement compromises claims that are contested and shall not be deemed an admission by the Parties as to the merits of any claim or defense. The Parties each agree that the Settlement was negotiated in good faith by the Parties, that it reflects a Settlement that was reached voluntarily after consultation with competent legal counsel, and that for the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party. The Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Action, except as set forth herein.

17.3.    Neither this Settlement Agreement, nor the terms and conditions contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal. Neither Defendants' agreement to make the payments into the Settlement Fund under this Agreement, nor the fact of those payments, is or may be deemed to be or may

be used as an admission, or evidence, that any of the settlement benefits provided for in Section 4 constitute compensable damages under the law.

If this Settlement Agreement does not become effective or is cancelled or terminated for any reason, the Agreement along with all related communications and documents exchanged in connection with the Agreement and mediation between the Parties shall be deemed a negotiation for settlement purposes only under Federal Rule of Procedure 408 and will not be admissible in evidence or usable for any purpose whatsoever in the Action or any proceeding between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Parties. Any of the Released Parties may file the Settlement Agreement and/or the Final Approval Order and Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17.4.    The terms and conditions of this Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approved by the Court; provided, however, that after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments or modifications of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

17.5.    This Settlement Agreement constitutes the entire agreement among the Parties hereto, and no representations, warranties, or inducements have been made to any Party concerning the Settlement Agreement, other than the representations, warranties and covenants contained and memorialized herein. Except as otherwise provided herein, each Party shall bear its own costs. This Agreement supersedes all previous agreements made between Representative Plaintiffs and Defendants.

17.6.    Interim Co-Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and are also expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

17.7.    The Parties understand that if the facts upon which this Agreement is based are hereafter found to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the release contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that by entering into this Agreement, it is understood and agreed that each Party relies wholly upon their own judgment, belief, and knowledge, and that each Party does not rely on any inducements, promises, or representations other than those contained herein.

17.8.   If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days unless otherwise specified.

17.9.   Before filing any motion with the Court raising a dispute arising out of or related to this Agreement, the Parties, through their respective counsel, shall consult with each other in good faith prior to seeking Court intervention.

17.10.  Parties' Counsel, or any other individual executing the Settlement Agreement on behalf of the Parties, hereby warrants that such individual(s) have the full authority to do so.

17.11.  The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

17.12.  The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

17.13.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement Agreement.

17.14.  The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the state of Massachusetts, and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the state of Massachusetts.

17.15.  The Final Approval Hearing shall be scheduled no earlier than: (i) ninety (90) days after the notices are mailed in compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(d); or (ii) fourteen (14) days after the Claims Deadline, whichever is later.

17.16.    The Parties agree to keep this Settlement confidential until it is submitted to the Court for preliminary approval, and the confidential declaration and joint agreement executed separately regarding the termination of the Settlement as contemplated hereunder confidential in perpetuity, except as otherwise contemplated and agreed by the Parties.

17.17.    All dollar amounts are in United States Dollars (USD).

17.18.    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed by themselves or by their duly authorized counsel:

**Interim Co-Lead Counsel on behalf of the Representative Plaintiffs and the Settlement Class:**

Name: John A. Yanchunis
Date:

Name: James J. Pizzirusso
Date:

**Counsel for Defendants Point32Health, Inc. and Harvard Pilgrim Health Care, Inc.**

Name: Michael T. Marcucci
Date: February 25, 2025